## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ARTIS C. CARROLL, JR.,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **NO. 19-721** |
| | : | |
| **HOWARD R. BAUMAN, *et al.*,** | : | |
| **Defendants.** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                    **May 9, 2019**

Millersville University suspended student Artis C. Carroll, Jr. for poor grades in December 2014. In an earlier filed case assigned to us, he is *pro se* suing the University and at least twenty-two other persons claiming this suspension violated his civil rights. Before suing the University, he initiated several self-described "protest" acts resulting in encounters and then arrests with University and Commonwealth law enforcement, judges, prosecutors and parole officers. He then *pro se* sued a Lancaster County judge for presiding over his current criminal charge. We dismissed this frivolous action barred by judicial immunity and Mr. Carroll is appealing our dismissal.

He now *pro se* sues state actors for civil rights violations arising from his "protests": (1) Howard R. Bauman, the University's Deputy Chief of Police; (2) Peter Anders, the University's Chief of Police; (3) Officer McDonald of the Lancaster City Police Department; (4) Officer James Hoback of the Upper Darby Police Department; (5) Karen L. Mansfield, an Assistant District Attorney; (6) Craig W. Stedman, the District Attorney for Lancaster County; (7) Lance D. Greene, an Assistant District Attorney; (8) Joshua R. Keller, a Magisterial District Judge in Lancaster County; and (9) Janelle Madara, a parole officer. Mr. Carroll seeks to proceed *in forma pauperis*. We grant Mr. Carroll leave to proceed *in forma pauperis* and dismiss certain parts of his claims as

frivolous. We abstain from adjudicating other claims relating to Mr. Carroll's pending criminal prosecution in state court. We sever other claims upon which Mr. Carroll may proceed at this time.

**I.     Alleged *pro se* facts.[1]**

### A. Mr. Carroll's history with the University and earlier criminal proceedings.[2]

Millersville University Respiratory Therapy Program suspended Artis C. Carroll, Jr., an African-American, in December 2014 because he received a poor grade, although he continued as a University student. He is challenging this suspension through a third attempt at pleading a complaint at No. 16-1406.[3]

His more recent *pro se* filings challenge the University's and Commonwealth's responses to his conduct apparently ignited by an unidentified University official telling Mr. Carroll the poor grade causing his University suspension is because of race discrimination. According to Mr. Carroll, the unidentified University official claimed in March 2015 to have submitted paperwork to correct the grade and told Mr. Carroll he would have to go to the University's Registrar to see the relevant document.

And so Mr. Carroll began tracking down this racial discrimination claim. Mr. Carroll first went to the Registrar's office. Staff called the University Police after Mr. Carroll refused to leave the Registrar's office after being asked. While nebulous in his *pro se* allegations, it can be fairly inferred the University may have previously restricted Mr. Carroll's visiting the Registrar's office. Mr. Carroll returned to the Registrar's office the next day, and staff ultimately called University Police because of the interaction. Mr. Carroll recorded the interaction on video and claims possessing evidence of being asked to leave for "racial reasons."[4] He claims he asked the Assistant Registrar "why he was doing this," to which the Registrar replied, "because you filed a complaint against [University] alleging racial discrimination."[5] The University Police arrested Mr. Carroll

and gave him a summary citation for defiant trespass. The University Police subsequently withdrew this summary citation.

Two days later, on March 27, 2015, the University placed Mr. Carroll on an interim suspension because of the events of the earlier two days. It also entitled him to a hearing on the disciplinary charges and instructed him in a "no trespass letter" not to return to University campus until the University resolved the matter or he would be prosecuted for defiant trespassing.

Mr. Carroll nevertheless returned to the University campus over the next few days and refused to leave as a "peaceful protest of the unlawful suspension."[6] He did so even though the University directed him not to trespass on its property. University Police arrested Mr. Carroll on March 27 and 31, 2015 and charged him with defiant trespass.[7] The state court consolidated these cases for trial. On December 1, 2015, the judge found Mr. Carroll not guilty of defiant trespass on March 27 but guilty of defiant trespass on March 31.[8] While the charges were pending, the University suspended Mr. Carroll until Spring Term 2016.

The state court sentenced Mr. Carroll to a term of twelve months incarceration but immediately paroled due to time served awaiting trial. "Additionally, as a condition of his sentence, the trial court directed [Mr. Carroll] to undergo a mental health evaluation, pay a fine of $300.00, perform fifty hours of community service, and 'have absolutely no contact with any employee of Millersville, [ ] have absolutely no contact with [Millersville] whatsoever.'"[9]

Six weeks later, on January 13, 2016, a state court found Mr. Carroll violated his parole by contacting the University. The state court sentenced him "to time served, resulting in him being paroled again immediately from prison. The sentencing order noted that all previously imposed conditions remained in effect."[10]

3

The Commonwealth charged Mr. Carroll on March 3, 2016 with "making terroristic threats, harassment, and disorderly conduct for an offense occurring on or about March 2 to 3, 2016, in Upper Darby Township," and again charged him with violating his parole.[11] Mr. Carroll resided in Upper Darby Township when not on the University campus. On July 12, 2016, after a parole hearing, the state court found Mr. Carroll violated his parole, revoked his parole, and remanded him to the county jail to serve the balance of his unexpired term" while leaving all other conditions of the sentence in effect.[12]

The Pennsylvania Superior Court affirmed Mr. Carroll's defiant trespass conviction and quashed his appeal of the July 12, 2016 revocation of his parole.[13] The docket reflects Mr. Carroll filed an unsuccessful post-conviction relief act petition.

## B. Events underlying Mr. Carroll's final parole proceedings, his suspension from the University, and his recent prosecution.

Mr. Carroll alleges his parole expired on November 30, 2016. On December 1, 2016, twelve hours after his parole expired, his parole officer, Janelle Madera, filed a parole violation against him because he did not complete his fifty hours of community service, even though, according to Mr. Carroll, she knew of he violated parole before then. The state court issued an arrest warrant on Officer Madera's violation.[14] The police arrested Mr. Carroll under the warrant in late April or early May 2017.[15] On June 22, 2017, the state court imposed a sentence but vacated the sentence a week later and terminated supervision.[16]

Mr. Carroll alleges the University would have allowed him to return in Fall 2017. But on July 7, 2017, University Chief of Police Anders informed him the University suspended him until July 2019. Chief Anders explained the University's suspension arose from Mr. Carroll's communications to the Lancaster County Public Defender's Office describing him intending to return to the University in the Fall 2017 and self-describing as "nothing like the students involved

4

in school shooting[s] like: Virginia Tech, Columbine, and Sandy Hook."[17] Mr. Carroll tried to explain the context of the statement to Chief Anders by claiming the University unfairly treated him as though he were one of those kind of shooters, but Chief Anders told Mr. Carroll if he returned to campus, he would either be shot or prosecuted for defiant trespass.

This suspension until July 2019 inspired Mr. Carroll to "spark" another 'protest'" in the form of "written communication" and the "protest is still alive."[18] Mr. Carroll alleges Chief Anders "gave this punishment [*i.e.*, the suspension] for racial reasons,"[19] apparently because "this whole situation started with a request to leave the [University] registrar office for racial reasons."[20] Chief Anders allegedly told Mr. Carroll's family the University suspended him because he "made a threat to shoot up the University."[21] Mr. Carroll sent the University Judicial Affairs a request for a hearing, but the University ignored his letter.

On February 15, 2018, the day after an individual shot and killed several students at a Florida high school, Mr. Carroll "sent an email to [University] staff, perhaps the media, and state government officials" to "protest" the July 7, 2017 letter he received from Chief Anders, with the subject line "Florida School Shooting at School in Florida, it is inappropriate for [the University] to take advantage of situations like the Florida School Shooting in order to advance there [sic] discrimination against Carroll."[22] Mr. Carroll alleges his email is an exercise of his freedom of speech.

The next day, the University's Deputy Chief of Police Howard Bauman charged Mr. Carroll with stalking by written communication and harassment by written communication in connection with this February 15, 2018 email.[23] Mr. Carroll alleges Deputy Chief Bauman based his affidavit to obtain the arrest warrant on various falsehoods. He also alleges the Deputy Chief's

5

affidavit failed to invoke the state court's jurisdiction due to its inadequacy and did not include the text of emails upon which it was allegedly based.

Magisterial District Judge Keller issued an arrest warrant on Deputy Chief Bauman's charge and Officer McDonald of the Lancaster City Police Department arrested Mr. Carroll on February 16, 2018.[24] Mr. Carroll alleges Officer McDonald "made a deal" with Chief Anders to "hunt Carroll down and arrest him without reasonable suspicion of criminal activity or probable cause in exchange for take out pizza," apparently because Officer McDonald made a joke upon arresting Mr. Carroll that Chief Anders was going to buy him pizza for effecting the arrest.[25] Chief Anders and Deputy Chief Bauman transferred Mr. Carroll to the Lancaster County Prison following this February 16, 2018 arrest.

Judge Keller arraigned Mr. Carroll and set bail. According to Mr. Carroll, Judge Keller and Karen Mansfield, the Commonwealth prosecutor assigned to the case, delayed the preliminary hearing. Judge Keller ultimately held the preliminary hearing on April 3, 2018, but Mr. Carroll claims Judge Keller lacked jurisdiction and denied him counsel. Mr. Carroll alleges Chief Bauman recanted certain allegations in his affidavit and failed to adequately support others Judge Keller held the charges for trial following the hearing and transferred the case to the Lancaster County Court of Common Pleas.

Lance Greene is currently serving as the Commonwealth's prosecutor on this case in Lancaster County. He moved to revoke Mr. Carroll's bail.[26] Mr. Carroll alleges the state court revoked his bail and issued a warrant to arrest Mr. Carroll who then resided in Upper Darby, Delaware County. Officer Hoback of the Upper Darby Police Department then arrested Mr. Carroll under this new warrant.[27] Mr. Carroll appears to claim Officer Hoback lacked probable cause because among other things, upon encountering Mr. Carroll in the street, he had no reason

6

to "know that Carroll was Carroll instead of anyone else" and failed to further explain the basis for the arrest warrant in his affidavit.[28]

According to Mr. Carroll, the state court lacks jurisdiction over his ongoing prosecution and the proceeding is being conducted in a manner violating his rights.[29] Mr. Carroll also alleges Mr. Greene is presently prosecuting him without probable cause and should not have sought to keep him incarcerated prior to trial.[30] Mr. Carroll has filed two *habeas* petitions in this Court challenging his pretrial detention, both of which are pending.[31]

## C. Mr. Carroll's present civil rights claims.

Mr. Carroll brings essentially three groups of claims. First, he brings claims under 42 U.S.C. § 1983 against Ms. Madera for filing a parole violation against him when his parole had expired, which he claims violated his due process rights and double jeopardy.[32] Second, he raises claims under § 1983 against Mr. Anders for issuing the two-year suspension, allegedly in violation of his due process rights, because he was not given a hearing and discriminated against "for racial reasons."[33] Third, he raises claims against Mr. Bauman, Mr. Stedman, Ms. Mansfield, Mr. Greene, and Judge Keller stemming from his 2018 prosecution for stalking and harassment based on Mr. Bauman's affidavit of probable cause and criminal complaint.

The third group of claims can be broken down into six sub-groups of claims: (1) claims against Deputy Chief Bauman under § 1981 and § 1983 for violation of his equal protection rights based on allegations Deputy Chief Bauman filed the affidavit of probable cause for "racial reasons";[34] (2) defamation and First Amendment claims against Deputy Chief Bauman based on his filing of a false affidavit of probable cause;[35] (3) claims against Judge Keller, Deputy Chief Bauman and Officer McDonald for violating Mr. Carroll's Fourth Amendment and Due Process rights by subjecting him to arrest and prosecution on the stalking and harassment charges;[36] (4)

7

malicious prosecution claims in violation of the Fourth Amendment and state law against Prosecutors Mansfield, Stedman, and Greene;[37] (5) claims under § 1985(2) and § 1985(3) against Deputy Chief Bauman and Prosecutor Greene for allegedly conspiring to prevent Mr. Carroll from obtaining information for his defense by moving to revoke his bail;[38] and (6) claims against Prosecutors Mansfield, Stedman, and Greene under § 1981 and § 1983 for violation of Mr. Carroll's equal protection rights because charges for making terroristic threats filed against a white individual in 2016 in Lancaster County were dropped.[39] Mr. Carroll asks us to award him monetary damages. He also asks we dismiss his pending stalking and harassment charges and for assorted injunctive relief.

## II. Analysis

Mr. Carroll is granted leave to proceed *in forma pauperis* because it appears he is unable to pay the costs of filing suit.[40] As Mr. Carroll is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) apply, which require the Court to dismiss the Complaint if it is frivolous or fails to state a claim. A Complaint is frivolous if it "lacks an arguable basis either in law or in fact,"[41] and is legally baseless if it is "based on an indisputably meritless legal theory."[42]

To survive dismissal, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[43] "[M]ere conclusory statements[] do not suffice."[44] We may also consider matters of public record.[45] As Mr. Carroll is proceeding *pro se*, we construe his allegations liberally.[46]

### A. We dismiss the Section 1981 claims.

Mr. Carroll brings § 1981 claims against Deputy Chief Bauman and Prosecutors Stedman, Mansfield, and Greene essentially based on their prosecution of the most recent stalking and harassment charges against him. But Section 1981 does not provide a private right of action

8

against a state actor.[47] Rather, § 1983 provides "the exclusive remedy for violations of § 1981 by state actors."[48] We dismiss Mr. Carroll's § 1981 claims as legally baseless.[49]

## B. Section 1985 claims.

Mr. Carroll's § 1985(2) and § 1985(3) claims are based on allegations Deputy Chief Bauman falsified his affidavit supporting the stalking and harassment charges, and Prosecutor Greene moved to revoke Mr. Carroll's bail "to protect Bauman" for lying in the affidavit, "for political reasons, and to prove himself to Stedman and others."[50] Mr. Carroll also alleges Prosecutor Greene "knows Bauman filed the charges for racial reasons and therefore is as well supporting the charges/prosecuting the charges for racial reasons."[51]

Prosecutors are entitled to absolute immunity from liability for acts which are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case."[52] As Mr. Carroll's § 1985 claims against Prosecutor Greene are based on conduct in his capacity as a prosecutor, those claims are barred by absolute prosecutorial immunity.

Mr. Carroll also failed to state a plausible basis for a § 1985(2) or § 1985(3) claim. "Section 1985(2) prohibits conspiracies to prevent witnesses from testifying in court, injuring witness who have testified, or attempting to influence or injure grand or petit jurors."[53] "[T]he essential allegations of a 1985(2) claim of witness intimidation are (1) a conspiracy between two or more persons (2) to deter a witness by force, intimidation or threat from attending court or testifying freely in any pending matter, which (3) results in injury to the plaintiffs."[54] Nothing in Mr. Carroll's Complaint supports a claim Deputy Chief Bauman and Prosecutor Greene intimidated witnesses by virtue of their conduct. We dismiss this claim as legally baseless.

9

"[T]o state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States."[55] "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred."[56] "[A] bare assertion of conspiracy will not suffice."[57]

The contours of Mr. Carroll's § 1985(3) claim are unclear and appear to be grounded in speculation. He suggests Prosecutor Greene moved to revoke his bail because of a conspiracy with Deputy Chief Bauman motivated either by a desire to protect Deputy Chief Bauman for political reasons, or to prevent Mr. Carroll from obtaining discovery, or because he knew Deputy Chief Bauman's affidavit was faulty, or because he knew Deputy Chief Bauman wanted to prosecute him for "racial reasons." He does not allege facts supporting a plausible basis for inferring Prosecutor Greene and Deputy Chief Bauman reached a conspiratorial agreement motivated by race-based animus. We dismiss Mr. Carroll's § 1985(3) claim because it is not plausible.

## C. Section 1983 claims and related state law claims.

### 1. We cannot dismiss the criminal charges against Mr. Carroll.

We dismiss Mr. Carroll's request for dismissal of the criminal charges against him because we lack the ability to dismiss state criminal charges. We may not intervene in Mr. Carroll's state criminal proceedings.[58] Mr. Carroll may present his arguments for dismissal to the state court in the first instance. Mr. Carroll is already challenging his pretrial detention in federal *habeas* petitions, as noted above.

10

## 2. We dismiss claims against Judge Keller as barred by judicial immunity.

The only apparent factual basis for Mr. Carroll's claims against Judge Keller are based on his rulings in Mr. Carroll's criminal case and the manner in which Judge Keller handled Mr. Carroll's criminal case. As we advised Mr. Carroll in dismissing his earlier case against Judge Wright, judges are entitled to absolute immunity from civil rights claims which are based on acts or omissions taken in their judicial capacity, if they do not act in the complete absence of all jurisdiction.[59] An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge."[60] Moreover, "[g]enerally . . . 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'"[61]

Although Mr. Carroll alleges Judge Keller lacked jurisdiction to proceed with the criminal charges, those allegations are insufficient to vitiate judicial immunity. Rather, they are essentially based on arguments of a lack of probable cause—rather than jurisdiction—because Mr. Bauman's allegations did not adequately establish he had committed an offense.[62] As Mr. Carroll's claims against Judge Keller are based on acts he took while presiding over Mr. Carroll's criminal case, judicial immunity applies. We dismiss Mr. Carroll's § 1983 claims against Judge Keller as legally baseless.[63]

### 3. We dismiss claims against Prosecutors Stedman, Mansfield and Greene as barred by prosecutorial immunity.

Mr. Carroll sued Prosecutors Stedman, Mansfield, and Greene based on acts they took while prosecuting the stalking and harassment charges against him. He highlights Prosecutor Mansfield prosecuted the Commonwealth's case at the preliminary hearing, Prosecutor Stedman "authorized the prosecution on April 27, 2018 when he signed and filed the information," and Prosecutor Greene "is presently prosecuting the case" and asked the state court to revoke Mr. Carroll's bail.[64]

11

Prosecutors are entitled to absolute immunity from liability under § 1983 for acts which are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case."[65] District Attorneys and other supervisory prosecutors are likewise entitled to absolute immunity from claims based on their role in pursuing a prosecution on behalf of the Commonwealth.[66] Absolute prosecutorial immunity also precludes state tort claims against prosecutors for acts taken in their prosecutorial capacity.[67]

Mr. Carroll's claims against Prosecutors Stedman, Mansfield, and Greene are based on acts they took in their prosecutorial capacities. Absolute prosecutorial immunity applies. We dismiss Mr. Carroll's claims against Prosecutors Stedman, Greene, and Mansfield as legally baseless.

### 4. We abstain from claims against Deputy Chief Bauman and Officer McDonald based on arrest and an ongoing prosecution.

Mr. Carroll seeks damages from Deputy Chief Bauman and Officer McDonald for subjecting him to arrest and prosecution on the stalking and harassment charges without probable cause in violation of the Fourth Amendment.[68] He claims Deputy Chief Bauman defamed him and violated his First Amendment rights because he was exercising his right to free speech when communicating with University staff. Mr. Carroll also claims Deputy Chief Bauman prosecuted him for "racial reasons," which we understand to be a "selective enforcement" claim.[69] We will abstain from adjudicating these claims until Mr. Carroll's state criminal case is resolved.

Under the abstention doctrine of *Younger*, we must abstain from adjudicating Mr. Carroll's claims related to the constitutionality of his arrest and prosecution while his criminal case is pending in state court. Federal courts must adjudicate all cases and controversies which are properly before them.[70] Abstention, however, "is the judicially created doctrine under which a federal court will decline to exercise its jurisdiction so that a state court or state agency will have the opportunity to decide the matters at issue."[71] Absent extraordinary circumstances, *Younger*

abstention applies when: "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims."[72] *Younger* abstention is "premised on the notion of comity, a principle of deference and 'proper respect' for state governmental functions in our federal system."[73]

Mr. Carroll's criminal proceedings are ongoing in state court. Pennsylvania has an important interest in enforcing its criminal laws. Mr. Carroll can raise his constitutional and other defenses to his prosecution in state court. There are no extraordinary circumstances otherwise justifying federal intervention. The United States Court of Appeals for the Third Circuit already concluded, in rejecting Mr. Carroll's attempt to remove this criminal case to federal court, Mr. Carroll failed to show "that he will be denied or cannot enforce his rights in state court."[74] Our Court of Appeals endorses abstention in similar circumstances.[75]

### 5. We abstain from claims against Officer Hoback in the ongoing prosecution.

Mr. Carroll appears to be raising Fourth Amendment claims against Officer Hoback based on his arrest on September 3, 2018 under a warrant from Lancaster County issued in his criminal case.[76] As this claim, like the claims against Deputy Chief Bauman and Officer McDonald, are intertwined with Mr. Carroll's underlying criminal prosecution, we will abstain from adjudicating this claim at this time under *Younger* for the same reasons it has abstained from adjudicating Mr. Carroll's other challenges to his prosecution and detention.

### 6. Mr. Carroll may proceed on a civil rights claims against Officer Madera.

Mr. Carroll brings a § 1983 claim against Ms. Madera, his former parole officer, for filing a parole violation against him after his parole had allegedly expired thereby subjecting him to detention without a legal basis. The Fourth Amendment provides the proper vehicle for such

13

claims because Mr. Carroll is challenging the legality of his pretrial detention.[77] Mr. Carroll will be permitted to proceed on his plead civil rights claim against Officer Madera subject to service and our review on a more fulsome record.

### 7. Claims against Chief Anders.

Mr. Carroll brings a § 1983 claim against Chief Anders for suspending him from the University for two years under the July 7, 2017 letter without providing him due process and for racially motivated reasons. Mr. Carroll may proceed to service on his claims against Chief Anders subject to our review on a more fulsome record.

### D. We sever the entirely unrelated claims against Chief Anders relating to the July 7, 2017 suspension from the University and against Officer Madera for issuing a parole violation after parole expired.

Mr. Carroll has improperly joined several claims which rest upon different factual bases. We must sever claims so the litigation can proceed in a logical fashion.

Federal Rule of Civil Procedure 20 allows a plaintiff to join multiple defendants in one action if: (a) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and (b) "any question of law or fact common to all defendants will arise in the action." "For courts applying Rule 20 and related rules, 'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'"[78] "But this application, however liberal, is not a license to join unrelated claims and defendants in one lawsuit."[79] "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2."[80]

14

Although Mr. Carroll's claims are all loosely derived from Mr. Carroll's relationship with the University at least at the start, the facts underlying his claims against his parole officer are distinct from the facts underlying his claims against Chief Anders for suspending him from the University. Those two claims are entirely distinct from the remaining allegations challenging his arrests, prosecution, and incarceration. As we must abstain from adjudicating the claims related to Mr. Carroll's arrest and prosecution until those issues are finally resolved, we sever this case into three cases so Mr. Carroll can proceed on his claims in separate lawsuits. We will abstain but retain the claims arising from the prosecution until following final order in this case. In the accompanying Order, we direct the Clerk of Court to open a new case for the claim against Chief Anders and a separate new case for the claim against Officer Madera. Upon opening those new cases, we will direct service and await their response to these allegations.

## III. Conclusion

We grant Mr. Carroll's Motion to charge his prison trust fund account and grant Mr. Carroll leave to proceed *in forma pauperis*. We dismiss his claims with prejudice because they are not subject to amendment: (1) § 1981 claims; (2) § 1985 claims against Prosecutor Greene; (3) § 1985(2) claim against Deputy Chief Bauman; (4) claims for injunctive relief in the form of dismissal of his state criminal case; and (5) remaining claims against Judge Keller and Prosecutors Greene, Mansfield, and Stedman.

We dismiss Mr. Carroll's § 1985(3) claim against Deputy Chief Bauman without prejudice.

We abstain from adjudicating Mr. Carroll's § 1983 claims and related state law claims against Deputy Chief Bauman, Officer McDonald, and Officer Hoback until his underlying criminal proceeding is resolved, including appellate proceedings.[81]

15

We sever Mr. Carroll's § 1983 claims against Chief Anders and Officer Madera so Mr.

Carroll may proceed on those claims separately before us.

---

[1] The facts are recited from the *pro se* Complaint and from the publicly available docket for Mr. Carroll's underlying criminal proceedings.

[2] Mr. Carroll does not appear to be raising claims based on the events of 2015 and 2016, including the prosecutions in 2015 leading to his conviction. Those events are recited today to offer necessary context.

[3] *Carroll v. Millersville University et al.*, No. 16-1406. Mr. Carroll appealed our inability to appoint him counsel in this civil rights case. Our Court of Appeals dismissed his appeal for lack of appellate jurisdiction. C.A. No. 18-3533 (Mar. 7, 2019).

[4] ECF Doc. No. 1 at 10, ¶ 8.

[5] *Id.*

[6] *Id.* at 12, ¶ 12.

[7] *Commonwealth v. Carroll*, Docket Nos. MJ-02206-CR-0000076-2015, MJ-02206-CR-0000078-2015.

[8] *Commonwealth v. Carroll*, Docket Nos. CP-36-CR-0001541-2015 & CP-36-CR-0001537-2015 (Lancaster Cty. Ct. of Common Pleas).

[9] *Commonwealth v. Carroll*, No. 1256 MDA 2016, 2017 WL 1178076, at *1 (Pa. Super. Ct. Mar. 29, 2017) (alterations in original). *Commonwealth v. Carroll*, No. 1256 MDA 2016, 2017 WL 1178076, at *1 (Pa. Super. Ct. Mar. 29, 2017) (alterations in original).

[10] *Id.* at *2.

[11] *Id.*

[12] *Id.*

[13] *Id.*; *Commonwealth v. Carroll*, No. 88 MDA 2016, 2017 WL 1178073, at *5 (Pa. Super. Ct. Mar. 29, 2017).

[14] *Commonwealth v. Carroll*, Docket No. CP-36-CR-0001537-2015 (Lancaster Cty. Ct of Common Pleas).

[15] ECF Doc. No. 1 at 37, ¶ 6.

[16] *Commonwealth v. Carroll*, Docket No. CP-36-CR-0001537-2015 (Lancaster Cty. Ct of Common Pleas).

[17] ECF Doc. No. 1 at 15, ¶ 16.

[18] *Id.* at 17, ¶ 20.

[19] *Id.* at 16, ¶ 19.

[20] *Id.* at 40, ¶ 13.

[21] *Id.* at 41, ¶ 14.

[22] *Id.* at 18, ¶ 23.

[23] *See Commonwealth v. Carroll*, Docket No. CP-36-CR-0001971-2018 (Lancaster Cty. Ct. of Common Pleas). The Common Pleas docket has been sealed, so the contents of the filings are not apparent to the public. *Commonwealth v. Carroll*, Docket No. MJ-2206-CR-0000047-2018.

[24] ECF Doc. No. at 28, ¶ 42; *see id.* at 55, ¶ 55.

[25] *Id.* at 27, ¶ 41; *see id.* at 56, ¶ 56.

[26] ECF Doc. No. 1 at 57, ¶ 61.

[27] *See* ECF Doc. No. 1 at 35, ¶ 61 (citing 42 Pa. Cons. Stat. § 9161).

[28] *Id.* at 35, ¶ 62. Despite the allegation, Mr. Carroll states in one of his *habeas* petitions "the Lancaster County District Attorney Office sent pictures of [him] to every cop in the place of [his] residence" which is Upper Darby Township. *See Carroll v. Court of Common Pleas of Lancaster Cty.*, Civ. A. No. 18-4959 (E.D. Pa.) (ECF No. 1 at ¶ 29). The *habeas* petition also suggests questions about Mr. Carroll's competency have been raised in the state proceeding, although it does not appear he has been adjudicated incompetent at this point. In any event, even if Mr. Carroll were incompetent, we must still screen his Complaint. *See Powell v. Symons*, 680 F.3d 301, 307 (3d Cir. 2012).

[29] *See* ECF Doc. No. 1 at 32.

[30] ECF Doc. No. 1 at 33, ¶ 57.

[31] *See Carroll v. Torrance State Hosp.*, No. 19-1152 (E.D. Pa.); *Carroll v. Court of Common Pleas of Lancaster Cty.*, No. 18-4959 (E.D. Pa.).

[32] ECF Doc. No. 1 at 36-38.

[33] *Id.* at 38-42.

[34] *Id.* at 43-46.

[35] *Id.* at 46-49.

[36] *Id.* at 50-56.

[37] *Id.* at 57-58.

[38] *Id.* at 58-59.

[39] *Id.* at 60-61. Although the Complaint refers to the Second Amendment, the Sixth Amendment, and various other state torts, Mr. Carroll does not again refer to those claims in the section of his Complaint which describes the counts he intends to bring and whom he intends to bring those counts against. Those claims are not plead in a manner which would permit Mr. Carroll to move forward on them.

[40] As Mr. Carroll is a prisoner, he must pay the $350 filing fee in installments under the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b). Mr. Carroll is currently located at Torrance State Hospital, so he does not have access to his account statement. We grant his "Motion to Charge Prison Trust Fund Account" and permit him to proceed *in forma pauperis* based on his representation he is indigent.

[41] *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

[42] *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995).

[43] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).

[44] *Id.*

[45] *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

[46] *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

[47] *See McGovern v. City of Philadelphia*, 554 F.3d 114, 121 (3d Cir. 2009).

[48] *Id.*

[49] *See Goodall-Gaillard v. N.J. Dep't of Corr.*, 625 F. App'x 123, 128 (3d Cir. 2015) ("[A]s the District Court properly noted, § 1981 does not provide a private right of action against state actors.").

[50] ECF Doc. No. 1 at 58-59.

[51] *Id.* at 59, ¶ 67.

[52] *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). Although this doctrine developed in the context of § 1983 claims, it applies to § 1985 claims as well. *See, e.g., Rosario v. Williams*, Civ. A. No. 13-1945, 2014 WL 338114, at *11 (E.D. Pa. Jan. 29, 2014) ("Inasmuch as Rosario's complaint arises from the prosecutor's decision to initiate and prosecute criminal charges, there is absolute immunity from liability under §§ 1983 and 1985.").

[53] *Stankowski v. Farley*, 251 F. App'x 743, 747 n.1 (3d Cir. 2007) (per curiam).

[54] *Rode v. Dellarciprete*, 845 F.2d 1195 (3d Cir. 1988) (quotations omitted).

[55] *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997); *Farber v. City of Paterson*, 440 F.3d 131, 136 (3d Cir. 2006) (explaining that "§ 1985(3) defendants must have allegedly conspired against a group that has an identifiable existence independent of the fact that its members are victims of the defendants' tortious conduct").

[56] *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010).

[57] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

[58] *See Younger v. Harris*, 401 U.S. 37, 43-44 (1971); *Duran v. Weeks*, 399 F. App'x 756, 758-59 (3d Cir. 2010) (per curiam) ("Since Duran's section 1983 action seeking to enjoin his criminal prosecution presents the classic case for *Younger* abstention, the District Court's dismissal of Duran's complaint on that basis was clearly appropriate.").

[59] *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (per curiam).

[60] *Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000).

[61] *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)).

[62] ECF Doc. No. 1 at 50, ¶ 42.

[63] *See, e.g., Mendoza v. Larotonda*, 270 F. App'x 157, 159 (3d Cir. 2008) (per curiam) ("Judge Larotonda is immune from suit for issuing the bench warrant against Mendoza because judges enjoy a comparatively sweeping form of immunity for official acts taken in their functional capacity as judges." (quotations omitted)).

[64] ECF Doc. No. 1 at 57, ¶ 61.

[65] *Imbler*, 424 U.S. at 430-31.

[66] *See Van de Kamp v. Goldstein*, 555 U.S. 335, 348-49 (2009).

[67] *See Durham v. McElynn*, 772 A.2d 68, 70 (Pa. 2001).

[68] "If [a] complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment." *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 919 (2017). In other words, it is the Fourth Amendment, rather than the Due Process Clause or any other constitutional provision, which provides the basis for challenging pretrial detention. As Mr. Carroll appears to invoke both the Due Process Clause and the Fourth Amendment to challenge his pretrial detention, we dismiss due process claims as legally baseless and construe Mr. Carroll's claims as Fourth Amendment challenges. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989))). "Arrests made under a 'validly issued—if not validly supported—arrest warrant' generally occur after the institution of legal process and, thus, sound in malicious prosecution rather than false arrest or imprisonment." *Noviho v. Lancaster Cty. of Pa.*, 683 F. App'x 160, 166 (3d Cir. 2017) (per curiam) (quoting *Myers v. Koopman*, 738 F.3d 1190, 1195 (10th Cir. 2013)); *Morales v. Busbee*, 972 F. Supp. 254, 266 (D.N.J. 1997) ("The 'legal process' that separates a false arrest/imprisonment claim from a malicious prosecution claim may be in the form of an arrest warrant, an arraignment, or an indictment."); *see also Wallace v. Kato*, 549 U.S. 384, 390 (2007) (explaining that the tort of malicious prosecution "remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal process"). The Commonwealth arrested Mr. Carroll under an arrest warrant supported by Deputy Chief Bauman's allegedly faulty affidavit of probable cause. As Mr. Carroll is alleging unlawful detention due to faulty process—as opposed to detention prior to legal process—his claims sound in a Fourth Amendment malicious prosecution claim rather than in false arrest or false imprisonment.

[69] *See Karns v. Shanahan*, 879 F.3d 504, 520-21 (3d Cir. 2018) ("A plaintiff seeking to establish a selective enforcement claim must demonstrate (1) that he was treated differently from other similarly situated individuals; and (2) that this selective treatment was based on an unjustifiable standard, such as race, religion, some other arbitrary factor or to prevent the exercise of a fundamental right." (footnote omitted)).

[70] *New Orleans Pub. Serv., Inc. v. City of New Orleans*, 491 U.S. 350, 358 (1989).

[71] *Heritage Farms, Inc. v. Solebury Twp.*, 671 F.2d 743, 746 (3d Cir. 1982).

[72] *Lazaridis v. Wehmer*, 591 F.3d 666, 671 (3d Cir. 2010) (quoting *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 408 (3d Cir. 2005)).

[73] *Evans v. C.C.P., Delaware Cty, Pa.*, 959 F.2d 1227, 1234 (3d Cir. 1992).

[74] *Pennsylvania v. Carroll*, No. 18-3368, 2019 WL 1461528, at *2 (3d Cir. Apr. 2, 2019) (per curiam).

[75] *See Jaffery v. Atlantic Cty. Prosecutor's Office*, 695 F. App'x 38, 40-41 (3d Cir. 2017) (affirming dismissal under *Younger* where plaintiff brought suit "against New Jersey prosecutors and police officers in the United States District Court for the District of New Jersey alleging violations of the

Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and seeking damages and an injunction against further prosecution."); *Sixth Angel Shepherd Rescue, Inc. v. Schiliro*, 596 F. App'x 175, 178 (3d Cir. 2015) (holding *Younger* abstention appropriate where the plaintiffs "claim[ed] that [one of the plaintiff's] prosecution in state court is a malicious prosecution, brought in bad faith, constitutes selective enforcement, retaliates for her protected First Amendment activities, and serves the prosecutor's private interests rather than the public good").

[76] Unlike his claims against the other Defendants, Mr. Carroll does not specify the basis of his claims against Officer Hoback.

[77] *See Manuel*, 137 S. Ct. at 919-20; *Albright*, 510 U.S. at 273 (1994).

[78] *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).

[79] *McKinney v. Prosecutor's Office*, No. 13-2553, 2014 WL 2574414, at *14 (D.N.J. June 4, 2014) (internal quotations omitted).

[80] *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

[81] *Commonwealth v. Carroll*, Docket No. CP-36-CR-0001971-2018 (Lancaster Cty. Ct. of Common Pleas).